IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY W.[1]                              :         CIVIL ACTION
                                           :
        v.                                 :
                                           :
FRANK BISIGNANO, Commissioner              :
of Social Security[2]                      :         NO.  24-6035

## MEMORANDUM AND ORDER

CAROLINE GOLDNER CINQUANTO, U.S.M.J.                February 25, 2026

Plaintiff seeks review of the Commissioner's decision denying his application for

disability insurance benefits ("DIB").[3]  For the reasons that follow, I conclude that the

decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence

and affirm the Commissioner's decision.

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using his first name and last initial.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Frank Bisignano was appointed Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this case.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[3]In order to be eligible for DIB, Plaintiff must establish that he became disabled prior to the expiration of his insured status or date last insured ("DLI").  20 C.F.R. § 404.131(b).  Here, Plaintiff's DLI is December 31, 2027.  Tr. at 20, 242.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed his DIB application on July 7, 2022, alleging disability beginning on April 13, 2021.  Tr. at 64, 207-11.[4]  He claimed disability as a result of back, shoulder, knee, and neck problems, as well as a hernia.  Id. at 248.  His application was denied initially on January 6, 2023, id. at 79-80, and again upon reconsideration on June 1, 2023.  Id. at 90-91.  On June 21, 2023, Plaintiff requested an administrative hearing.  Id. at 102-03.  After holding a hearing on November 15, 2023, id. at 35-57, the ALJ issued an unfavorable decision on April 16, 2024.  Id. at 17-29.  The Appeals Council denied Plaintiff's request for review on September 13, 2024, id. at 1-3, making the ALJ's April 16, 2024 decision the final decision of the Commissioner.  20 C.F.R. § 404.981.

Plaintiff sought review in federal court on November 12, 2024, Doc. 1, and the matter is now fully briefed.  Docs. 15-17.  The case was originally assigned to my colleague, the Honorable Scott W. Reid, and was reassigned to me.  Doc. 7.[5]

## II.    LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

---

[4]Although there is an application for supplemental security income in the record, see tr. at 197-05, Plaintiff's counsel made clear at the administrative hearing that he was proceeding only on the DIB application.  Id. at 38.

[5]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Docs. 4 & 9.

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014) (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.     Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.     If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;
>
> 3.     If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4.     If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and

5.     If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of his age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.  DISCUSSION

### A.   ALJ's Findings and Plaintiff's Claims

In his April 16, 2024 decision, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of April 13, 2021.  Tr. at 20.  At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral hip degenerative joint disease ("DJD"), cervical fusion, and bilateral lumbosacral spondylosis.[6]  Id. at 20.  At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals

---

[6]Lumbar spondylosis is "[DJD] affecting the lumbar vertebrae and intervertebral disks, causing pain and stiffness, sometimes with sciatic radiation due to nerve root pressure by associated protruding disks or osteophytes." Dorland's Illustrated Medical Dictionary, 32nd ed. (2012) ("DIMD"), at 1754.

the severity of one of the listed impairments." Id. at 21.  The ALJ found that Plaintiff has

the residual functional capacity ("RFC") to perform light work (lift and carry up to 20

pounds occasionally and 10 pounds frequently); stand and walk up to 6 hours in an 8-

hour workday; sit up to 6 hours in an 8-hour workday; never use ladders, ropes, or

scaffolds; and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and

crawl.  Id. at 22.  At the fourth step, the ALJ found Plaintiff is capable of performing his

past relevant work as a procurement supervisor.  Id. at 28.  As a result, the ALJ found that

Plaintiff is not disabled.  Id. at 29.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence

because the ALJ failed to properly consider the consultative examiner's opinion and

relied on the medical opinion of a record reviewer who did not have the benefit of the

complete record.  Doc. 15.  Defendant responds that the ALJ properly considered the

opinion evidence and his decision is supported by substantial evidence, and that state

agency expert opinions "merit significant consideration" even when "there is a lapse of

time between the opinion and the ALJ's decision."  Doc. 16 at 7 (quoting Chandler v.

Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011)).  Plaintiff has filed a Reply.

Doc. 17.

### B.  Plaintiff's Claimed Limitations and Testimony at the Hearing

Plaintiff was born on April 12, 1961.  Tr. at 207.  He completed one year of

college in 1981.  Id. at 249.  Plaintiff's past relevant work is as a supervisor in the

procurement department for the state government.  Id. at 41, 277.[7]  Plaintiff was 60 years old when he stopped working for the state government, and 63 years old at the time of the ALJ's decision on April 16, 2024.  Id. at 41, 207.

At the administrative hearing, Plaintiff testified as follows.  He retired from his job in April 2021, when he was having difficulty standing and sitting for extended periods of time.  Tr. at 41.  He suffers from pain and numbness in the lower part of his body, starting at the groin and traveling down both legs.  Id. at 42.  Plaintiff estimated that he could sit for 45 minutes to an hour before the pain is intolerable.  Id.  Plaintiff explained that even when driving a mile or two, he needs to twist and move around behind the steering wheel.  Id. at 46.  Plaintiff estimated that he can stand for 10-15 minutes at a time before the pain forces him to sit down.  Id. at 49.  After walking about a third of a mile, Plaintiff feels stiffness and tingling in his right leg.  Id. at 45.  If he lifts over 20 pounds, "then the next day [he] can really feel it" in his back.  Id. at 47.  He cannot stand straight and has to lean forward to take pressure off his back.  Id. at 48

At the time of the administrative hearing, Plaintiff had recently undergone two of three planned spinal injections.  Tr. at 43.  According to Plaintiff, he experienced some relief for about 72 hours after the injection.  Id. at 44.  He said that his pain medications, meloxicam and Flexeril,[8] help, but do not alleviate the pain completely.  Id. at 44.  He

---

[7]Plaintiff explained at the hearing that he works part time (12-16 hours a week) at the front desk of a golf course.  Tr. at 42.

[8]Meloxicam (brand name Mobic) is a nonsteroidal anti-inflammatory drug used to relieve pain, tenderness, selling, and stiffness caused by osteoarthritis and rheumatoid arthritis.  See https://www.drugs.com/meloxicam.html.  Cyclobenzaprine (brand name

gets some relief lying on a reclining sofa, when he can elevate his legs 18-20 inches.  Id. at 46.

A vocational expert ("VE") also testified at the administrative hearing.  Tr. at 51-54.  The VE characterized Plaintiff's procurement and purchasing supervisor job as light, skilled work.  Id. at 51.  Based on the hypothetical posed by the ALJ with the limitations included in the ALJ's RFC assessment, see supra at 4-5, the VE testified that such an individual could perform Plaintiff's past work as a procurement and purchasing supervisor.  Id. at 52.  In addition, when the ALJ added limitations that the person would only be able to sit in one hour increments and stand and walk in 30 minute increments, the VE said that such a person could perform Plaintiff's past job.  Id.  However, when Plaintiff's counsel asked if the person alternated between sitting and standing at 15-minute intervals, the VE stated that Plaintiff's work would be eliminated.  Id. at 53-54.

### C.    Medical Evidence Summary

#### 1.    Treatment Providers

Plaintiff has a history of cervical fusion surgery in the mid 1990s, tr. at 421, 436, and a right inguinal hernia repair on May 7, 2019.  Id. at 364-65.  On July 25, 2022, Plaintiff complained to Julianne Campfield, CRNP, ("NP Campfield"), of neck pain that had been present for the prior 10 years, but had been getting progressively worse in the prior few weeks.  Id. at 488.  Plaintiff complained of stiffness in both shoulders, spasms

---

Flexeril) is a muscle relaxant used for muscle spasms caused by sprains and strains and acute low back or neck pain.  See https://www.drugs.com/cyclobenzaprine.html (last visited Feb. 11, 2026).

most of the time, and "feeling like he has some numbness and difficulty turning to the left side of the body." Id.   NP Campfield prescribed cyclobenzaprine and prednisone.[9]

On September 12, 2022, Plaintiff began treatment at Penn Pain Medicine ("Penn Pain"), for neck pain. Tr. at 421.  On examination, Blake Stewart Watterworth, M.D., noted tenderness in the left trapezius and left cervical paraspinal muscles, and diminished range of motion with pain.  Id. at 424.  Dr. Watterworth added Mobic to Plaintiff's medication regimen and ordered cervical x-rays.  Id. at 424-25.  The x-rays revealed fusion hardware at C4-6 and "mild degenerative changes at C3-4 and C6-7 and C7-T1." Id. at 426.

Plaintiff returned to NP Campfield for a routine physical on January 13, 2023, during which he reported recurring neck pain and lower back pain.  Tr. at 491.  NP Campfield noted a normal physical examination.  Id. at 493-94.  On April 10, 2023, Plaintiff called asking to schedule an x-ray for worsening back pain, and scheduled an appointment with his provider.  Id. at 514.  On April 24, 2023, Plaintiff complained of lower back pain "described as pressure within the buttock region" and "movement pain when turning to the right and left."  Id. at 512.  NP Campfield noted tenderness and decreased range of motion in the lumbar spine, and "[t]enderness noted along [the] right upper buttock region with radiation to the right groin upon leg lift raise when standing and sitting."  Id. at 513.  NP Campfield ordered x-rays of the lumbar spine, a steroid

---

[9]Prednisone is a corticosteroid used to decrease inflammation.  See https://www.drugs.com/prednisone.html (last visited Feb. 11, 2026).

taper, a physical therapy consultation.  She referred Plaintiff to a spine specialist for further evaluation.  Id. at 513-14.  The lumbar spine x-ray showed moderate to severe L5-S1 disc space narrowing and a 3 mm anterior listhesis L4 upon L5.[10]  Id. at 504.

On May 10, 2023, Plaintiff returned to Penn Pain for lower back pain.  Tr. at 555-56.  Nitin Goyal, M.D., noted pain in the back with axial loading (downward pressure on the head) bilaterally and pain on flexion.  Id. at 557.  FABER and FADIR tests were positive bilaterally.[11]  Id.  Dr. Goyal diagnosed Plaintiff with "[b]ilateral lumbosacral spondylosis (with pain from facet joints bilaterally at the L4/5 and L5/S1 facets) [and] [b]ilateral hip pain (likely secondary to [osteoarthritis], given positive anterior groin pain with [range of motion] of the hips on FABER and FADIR)."  Id.  Dr. Goyal referred Plaintiff for physical therapy and ordered x-rays of the hips.  Id.  The doctor continued meloxicam.  Id. at 557-58.  Radiographs of Plaintiff's hips revealed mild to moderate degenerative changes of the right hip and mild degenerative changes of the left hip.  Id. at 567.

Plaintiff began physical therapy on May 15, 2023, at which time, his physical therapist, Ann Miller, PT, ("PT Miller"), noted "[m]oderate to severe loss of lumbar flexion, extension, and side bend right and left."  Tr. at 572.  On May 22, 2023, PT Miller

---

[10]Anterolisthesis, also called spondylolisthesis, is the forward displacement of one vertebra over another.  DIMD, at 98, 1754.

[11]FABER (Flexion, Abduction, and External Rotation), also known as the Patrick test, and FADIR (Flexion, Adduction, and Internal Rotation) tests are used to diagnose arthritis or other impingement of the hip.  DIMD, at 1896.

noted that Plaintiff had "[poor] lower extremity flexibility," but noted that his back "felt good after treatment today."  Id. at 593.  Plaintiff returned to physical therapy on June 16, 2023, after missing several weeks "due to work travel," and reported improved right groin pain, but complained of lower back stiffness.  Id. at 598.  After five treatment sessions, on June 26, 2023, Plaintiff reported his right groin pain had resolved, his lower back pain remained, but was reduced.  Id. at 603; compare id. at 603 (6/26/23 - reporting low back pain as 0/10 – 5/10), with id. at 571 (5/15/23 - reporting low back pain as 3/10 – 7/10).  On August 14, 2023, PT Miller discharged Plaintiff after five visits.  Id. at 611.

On July 25, 2023, Plaintiff returned to Penn Pain with complaints of continued low back pain.  Tr. at 663.  Justin Roh, M.D., noted that Plaintiff had recently completed more than six weeks of physical therapy with no significant difference in his pain, and was complaining that meloxicam and cyclobenzaprine were not helping.  Id.  Dr. Roh discontinued those medications and started Plaintiff on Celebrex, and planned bilateral L3, L4, and L5 medial branch blocks.[12]  Id. at 664.  The doctor planned two diagnostic blocks, and if successful, thermal radiofrequency ablation.[13]  Id.

On October 4 and November 1, 2023, Dr. Roh performed the medial branch block injections.  Tr. at 646-47 (10/4/23 – Operative Note), 683-84 (11/1/23 – Operative Note).

---

[12]Celebrex is a nonsteroidal, anti-inflammatory drug, used to treat pain or inflammation caused by many conditions.  See https://www.drugs.com/celebrex.html (last visited Feb. 11, 2026).

[13]Radiofrequency ablation is the destruction of precisely controlled areas of tissue by heat induced by low-frequency electromagnetic waves.  DIMD at 4.

At the administrative hearing, Plaintiff testified that the first two injections provided relief for 48-72 hours, and that he was scheduled for the third procedure on November 20, 2023.  Id. at 43.

2.    Consultative Examiner and State Agency Medical Consultants

On December 1, 2022, Abby Neely, N.P., ("NP Neely"), conducted a consultative examination.  Tr. at 436-440.  NP Neely noted that Plaintiff has slight kyphosis[14] and had "an awkward balance and leaned forward too far" as he walked on heels and toes.  Id. at 438.  He also needed help getting on and off the exam table.  Id.  X-rays performed the day of the examination showed "[s]evere degenerative change at the L5-S1 level [and] [m]ild to moderate degenerative change at the L1-L5 levels."  Id. at 441.

Based on her examination, NP Neely found Plaintiff could occasionally lift/carry up to 50 pounds and frequently lift/carry carry up to 20 pounds.  Tr. at 442.  He could sit for 6 hours in 1-hour increments and stand and walk for 3 hours each in 30-minute increments.  Id. at 443.  She also found that Plaintiff could never climb ladders or scaffolds; could occasionally climb stairs and ramps, stoop, kneel, crouch, and crawl; and could frequently balance.  Id. at 445.

On January 3, 2023, at the Agency's initial consideration stage, Charles Joseph Hubbard, Jr., M.D., opined from his review of the records that Plaintiff could occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds, sit for 6 hours and

---

[14]Kyphosis is "abnormally increased convexity in the curvature of the thoracic vertebral column."  DIMD at 992.

stand/walk for 6 hours in an 8-hour workday.  Tr. at 60-61.  Pamela Irene Gianni, M.D.,

opined from her review of the records that Plaintiff could occasionally lift/carry 20

pounds and frequently lift/carry 10 pounds, sit for 6 hours and stand/walk for 6 hours in

an 8-hour workday.  Id. at 84-85, 94-95.  Dr. Gianni found Plaintiff had no postural,

manipulative, or environmental limitations.  Id. at 61.

At the reconsideration stage, on June 1, 2023, Charles Michael Manganiello,

M.D., found that Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry

10 pounds, sit for 6 hours and stand/walk for 6 hours in an 8-hour workday.  Tr. at 69.

Additionally, the doctor found Plaintiff could never climb ladders, ropes, or scaffolds,

and could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, or crawl.  Id.

Dr. Manganiello found Plaintiff had no manipulative or environmental limitations.  Id. at

70.

### D.    Plaintiff's Claims

Both of Plaintiff's claims focus on the ALJ's consideration of opinion evidence.

The ALJ's consideration of medical opinion evidence is governed by regulations which

focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight,
> including controlling weight, to any medical opinion(s) or
> prior administrative medical finding(s), including those from
> your medical sources.

20 C.F.R. § 404.1520c(a).  The regulations list the factors to be utilized in considering

medical opinions:  supportability, consistency, treatment relationship (including the

length and purpose of the treatment and frequency of examinations), specialization, and

other factors including familiarity with other evidence in the record or an understanding

of the disability program.  Id. § 404.1520c(c).  The most important of these factors are

supportability and consistency, and the regulations require the ALJ to explain these

factors, but do not require discussion of the others.  Id. § 404.1520c(b)(2).  The

regulations explain that supportability means "[t]he more relevant the objective medical

evidence and supporting explanations presented by a medical source are to support his or

her medical opinion(s) . . . , the more persuasive the medical opinions . . .  will be."  Id.

§ 404.1520c(c)(1).  In addition, consistency means "[t]he more consistent a medical

opinion(s) . . .  is with the evidence from other medical sources and nonmedical sources .

. . , the more persuasive the medical opinion(s) . . . will be."  Id. § 404.1520c(c)(2).

### 1.    Consideration of the Consultative Examiner's Opinion

Plaintiff complains that the ALJ's consideration of the consultative examiner's

opinion is "seriously flawed" because the ALJ's supportability evaluation is conclusory,

and his consistency analysis "demonstrates a fundamental misunderstanding of the

medical evidence."  Doc. 15 at 10-14.  Defendant responds that the ALJ properly

considered the opinions of NP Neely and his analysis is weaved through the discussion of

all the medical opinion evidence.  Doc. 16 at 6-7.

Plaintiff argues that "[t]he reasons provided by the ALJ for rejecting Ms. Neely's

medical opinions do not identify any supportability concerns and do not identify any

actual inconsistency with the longitudinal record."  Doc. 15 at 9.  The court finds

Plaintiff's argument confusing because the ALJ found that NP Neely overstated

Plaintiff's exertional abilities and adopted NP Neely's limitations regarding Plaintiff's

13

abilities to sit, stand, and walk.   NP Neely found Plaintiff capable of lifting and carrying 50 pounds occasionally and 20 pounds frequently.  Tr. at 442.  These limitations fall somewhere between light work, which requires lifting no more than 20 pounds with frequent lifting of 10 pounds, id. § 404.1567(b), and medium work, which requires lifting no more than 50 pounds and frequent lifting of 25 pounds.  Id. § 404.1567(c).

Plaintiff contends that NP Neely's limitations "would have restricted [Plaintiff] to sedentary work."  Doc. 15 at 14.[15]  This is incorrect.  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).  Thus, NP Neely's assessment that Plaintiff could lift and carry 50 pounds occasionally, and 20 pounds frequently, far exceeds sedentary work based on the lifting and carrying requirements.

With respect to the sitting, standing, and walking requirements, sedentary work "involves sitting, [but] a certain amount of walking and standing is often necessary in carrying out job duties."  20 C.F.R. §  404.1567(a).  NP Neely found Plaintiff could sit for 6 hours a day in 1-hour increments, and stand and walk for 3 hours each in 30-minute increments.  Id. at 443.  This is consistent with light work, which "requires a good deal of walking or standing, or . . . . involves sitting most of the time with some pushing and

---

[15]The ALJ's finding that Plaintiff can perform light work is particularly important for the disability determination in this case for two reasons.  First, the VE characterized Plaintiff's prior work as a procurement supervisor as light work and the ALJ determined at the fourth step of the sequential evaluation that Plaintiff could return to his prior work. Second, based on Plaintiff's age, the Medical Vocational Guidelines ("Grids") would direct a finding of disabled (grid out) if Plaintiff were capable of only sedentary work.  20 C.F.R. Pt. 404, Supbt. P, App. 2 § 201.06.

pulling of arm or leg controls." Id. § 404.1567(b).  The Social Security Administration

has explained, "light work requires standing or walking, off and on, for a total of

approximately 6 hours of an 8-hour workday."  Social Security Ruling ("SSR") 83-10,

"Titles II and XVI:  Determining Capability to Do Other Work – The Medical-Vocational

Rules of Appendix 2, 1983 WL 31251, at *6 (Jan. 1, 1983).  Thus, the sitting, standing,

and walking limitations contained in NP Neely's assessment are consistent with light

work, not sedentary work.

Moreover, the ALJ incorporated NP Neely's sitting, standing, and walking

limitations in questioning the VE.  The VE testified that someone who could occasionally

lift and carry 20 pounds, frequently lift and carry 10 pounds, and "stand and walk for up

to 6 hours total" and sit for up to 6 hours, could perform Plaintiff's job as a procurement

supervisor.  Tr. at 52 (emphasis added).[16]  The ALJ then incorporated the specific

increments included in NP Neely's assessment.

> Q.    . . . What jobs -- which is basically hypothetical
> one with the addition of two requirements, and that is for
> sitting, sit only up to one hour per incidence and stand and
> walk each up to 30 minutes of incidence.  . . . [W]ould the
> prior work still be possible.
> A.    Yes.

---

[16]The ALJ included greater postural limitations in his hypothetical than NP Neely included in her assessment.  Compare tr. at 52 (ALJ's postural limitations - never use ladders, ropes, or scaffolds; and occasionally use ramps, stairs, balance, stoop, kneel, crouch, and crawl), with id. at 445 (NP Neely assessment - never climb ladders or scaffolds; occasionally climb stairs and ramps, stoop, kneel, crouch, or crawl; and frequently balance).

Id. at 52.  Thus, NP Neely's assessment regarding Plaintiff's abilities to sit, stand, and walk is consistent with his ability to perform his prior job as a procurement supervisor.

2.     <u>Consideration of State Agency Medical Consultant's Opinion</u>

Plaintiff also argues that the ALJ improperly relied on the medical opinion of Dr. Manganiello, because the doctor did not consider the complete record.  Doc. 15 at 15-18. Defendant responds that "the Third Circuit recognizes that state agency expert opinions . . . 'merit significant consideration' even though there is a time lapse between he opinion and the ALJ's decision."  Doc. 16 at 6 (quoting <u>Chandler</u>, 667 F.3d at 361).

 Here, Dr. Manganiello reviewed the record and offered his opinion on June 1, 2023.  <u>Tr.</u> at 71.  Among the records he reviewed were the April 24, 2023 lumbar spine x-ray showing moderate to severe L5-S1 disc space narrowing and the 3 mm anterolisthesis at L4 upon L5, as well as the May 15, 2023 x-ray of Plaintiff's hips and pelvis showing degenerative changes right greater than left.  <u>Id.</u> at 69-70.  Dr. Manganiello also considered the examination reports from Penn Pain from April 24, 2023 and May 10, 2023.  The April 24, 2023 report specifically noted the tenderness in Plaintiff's lumbar back and along the right upper buttock region with radiation to the groin and decreased range of motion. The May 10, 2023 report specifically noted "pain on axial loading" and pain with flexion, and tenderness to palpation at L4/5 and L5/S1 facet joints.  <u>Id.</u> at 70.[17]

---

[17]The ALJ found Dr. Hubbard's opinion that Plaintiff could perform the full range of medium work was not well supported by Dr. Hubbard's explanation and not consistent with other evidence in the record.  <u>Tr.</u> at 27.  Notably, Dr. Hubbard reviewed the record on January 3, 2023, <u>id.</u> at 61, prior to Plaintiff seeking treatment for pain in his lower back.

16

Plaintiff complains that Dr. Manganiello did not consider the full record because he did not mention the x-rays showing severe degenerative changes at L5-S1 performed on December 1, 2022 and attached to NP Neely's consultative examination assessment. Doc. 15 at 16 (citing tr. at 441). Although Dr. Manganiello did not specifically discuss the x-ray from December 1, 2022, he was in receipt of NP Neely's assessment, which included the radiology report. In addition, Dr. Manganiello explained that "[t]he statement of evidence in the determination of 01/03/2023 [which specifically mentioned the December 1, 2022 x-ray report, see id. at 59], is hereby incorporated by reference, but not by inferences, the findings or the conclusions based thereon." Id. at 70.[18]

Plaintiff also complains that Dr. Manganiello "did not consider material medical evidence developed after his medical opinion was issued," including the physical therapy notes and the bilateral L3, L4, and L5 medial branch blocks Plaintiff underwent to seek relief for his chronic low back pain. Doc. 15 at 17. Plaintiff contends that "Dr. Manganiello['s] assessment was based on a fundamentally incomplete picture of [Plaintiff's] condition." Id. Defendant responds that the ALJ is required to consider the State Agency medical consultant's opinion even when there is a time lapse between that opinion and the ALJ's decision. Doc. 16 at 7.

The Third Circuit addressed this issue in Chandler, where the District Court rejected a State Agency medical consultant's report finding it was "no longer useful to the

---

[18]Looking at Dr. Manganiello's report, in the "Reconsideration" section, the doctor listed the evidence presented to him that was not available at the initial review stage. Tr. at 70-71.

ALJ determination" because the consultant had not reviewed records post-dating his review, but predating the ALJ's review.  667 F.3d at 360.  The Third Circuit reversed, finding that "the ALJ was entitled to rely on [the State agency medical consultant's] opinion."  Id. at 361.

> [B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision.  The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it.  Only where "additional medical evidence is received that in the opinion of the [ALJ] . . . may change the state agency medical . . . consultant's" opinion is an update to the report required.

Id. (quoting SSR 96-6p) (emphasis in original); see also Andrea P. v. Kijakazi, Civ No. 21-307, 2022 WL 2128727, at *15 (D.N.J. Jun. 14, 2022) ("An ALJ may rely on a state agency physician's findings and conclusions even where there is a lapse of time between the time at which they rendered their opinions and the ALJ's decision and where additional medical evidence has been submitted after they rendered their opinions."); Wilson v. Astrue, 331 Fed. App'x  917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

Here, Dr. Manganiello reviewed the record on June 1, 2023.  Tr. at 71.  Plaintiff had no additional x-rays after Dr. Manganiello's review.  The ALJ rendered his opinion on April 16, 2024, and in the decision reviewed the intervening records.  Id. at 29.  The treatment notes in the interim establish that Plaintiff attended physical therapy five times.

18

When Plaintiff began therapy, he had "[m]oderate to severe loss of lumbar flexion, extension, and side bend right and left." Id. at 572.  On June 16, 2023, Plaintiff reported that his right groin pain had resolved and he showed improvement in his symptoms and pain.  Id. at 598, 599, 610.

In addition, the Plaintiff saw Dr. Roh, who performed medial branch block injections on October 4, 2023 and November 1, 2023, id. at 646-47 (10/4/23 – Operative Note), 683-84 (11/1/23 – Operative Note), and planned to perform thermal radiofrequency ablation if the branch block injections were successful.  Id. at 664. Although Plaintiff contends that the injections "represent a significant escalation in treatment," Doc. 15 at 17, the ALJ reviewed all of the intervening evidence in his opinion, id. at 26, specifically noting in considering Dr. Manganiello's opinion that PT Miller observed that Plaintiff "had made progress toward [his] long-term goals with reduction in pain and improved function."  Id. at 28 (citing id. at 610).  Thus, I conclude that the ALJ did not err in his consideration of Dr. Manganiello's opinion.

Finally, Plaintiff argues that that the ALJ erred in considering the consistency of Dr. Manganiello's opinion with other evidence in the record.  Doc. 15 at 18.  Specifically, Plaintiff maintains that Dr. Manganiello's opinion is inconsistent with Plaintiff's activities of daily living and NP Neely's opinion.  Doc. 15 at 18.

With respect to his activities of daily living, Plaintiff alleges that his activities of daily living "do not exceed standing or walking more than a total of 3 hours per day." Doc. 15 at 18.  He argues that Dr. Manganiello's opinion, limiting Plaintiff to light work, is inconsistent with this level of activity.  This argument is belied by the record.  In his

19

Function Report, Plaintiff stated that he has the ability to do laundry and iron, shop in stores for food and clothing, and attend church twice a month.  Tr. at 269-75.  In addition, Plaintiff testified that he works 4-6 hours a day (12-16 hours a week) at the front desk of a golf club.  Id. at 42-43.  Although he was given an accommodation to sit when customers were not at the desk, id. at 43, such activity is not inconsistent with light work.

Plaintiff also argues that Dr. Manganiello's opinion is inconsistent with NP Neely's opinion that he was capable of only sedentary work.  As previously discussed, see supra at 14-15, NP Neely's assessment is not consistent with sedentary work.  In fact, Dr. Manganiello's assessment, limiting Plaintiff to light work, is more restrictive than NP Neely's assessment.  Both medical professionals limited Plaintiff to a total of sitting for 6 hours, and standing and walking for 6 hours in an 8-hour workday.  Tr. at 69 (Dr. Manganiello), 443 (NP Neely).  Dr. Manganiello limited Plaintiff to occasionally lifting and carrying 20 pounds, id. at 69, while NP Neely found Plaintiff could occasionally lift 50 pounds.  Id. at 442.  Both agreed Plaintiff could frequently lift up to 20 pounds.  Id. at 69, 442.  Both assessments exceed sedentary work.  Thus, I find no error in the ALJ's consideration of the consistency of Dr. Manganiello's opinion.  Dr. Manganiello's opinion is consistent with Plaintiff's daily activities and actually more restrictive than the other medical assessments in the record.

## IV.    CONCLUSION

The ALJ's decision is supported by substantial evidence.  The ALJ properly considered the assessments provided by NP Neely and Dr. Manganiello.  Contrary to Plaintiff's argument, NP Neely's assessment was not consistent with sedentary work.

20

Although Dr. Manganiello did not have the benefit of the most recent treatment records, the ALJ adequately addressed that evidence in his decision.

An appropriate Order follows.